**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Romich, | No. CV-18-08338-PCT-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Jason Romich's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 11, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 12, Def. Br.), and Plaintiff's Reply Brief (Doc. 13, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 10, R.) and now affirms the Administrative Law Judge's ("ALJ") decision (R. at 12–28) as upheld by the Appeals Council (R. at 1–6).

## I.    BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits on December 16, 2014, for a period of disability beginning on April 12, 2014. (R. at 15.) His claim was denied initially on July 13, 2015, and upon reconsideration on November 30, 2015. (*Id.*) On September 13, 2017, Plaintiff appeared before the ALJ for a hearing regarding his

claim. (*Id.*) On January 29, 2018, the ALJ denied Plaintiff's claims, and on October 2, 2018, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 1.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: lumbar degenerative disc disease with lumbar radiculopathy and spondylolisthesis, obesity, and diabetes mellitus. (R. at 17.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 23.) The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 18.) The ALJ found that Plaintiff can perform "light work" but "would be limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling, and climbing on ramps and stairs." (R. at 18.) Further, Plaintiff "must avoid occupations that require climbing on ladders, ropes and scaffolds, and cannot be exposed to dangerous machinery and unprotected heights." (R. at 18.) Accordingly, the ALJ found that Plaintiff can perform his "past relevant work as a data entry [sic], mold operator, and cashier." (R. at 22.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.

*Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.    ANALYSIS

Plaintiff raises three arguments for the Court's consideration. (Pl. Br. at 5–14.) First, Plaintiff argues that the ALJ erred by not finding that he is disabled per se under Listing

1.04 (disorders of the spine). (Pl. Br. at 5.) Second, Plaintiff argues that the ALJ erred by giving no weight to the opinion of Dr. Thomas Greenwood, Plaintiff's treating physician. (R. at 9.) Finally, Plaintiff argues that the ALJ erred by improperly rejecting his symptom testimony. (Pl. Br. at 11.) The Court disagrees with each of Plaintiff's arguments.

### A. The ALJ did not err by finding that Plaintiff was not disabled per se under Listing 1.04.

Plaintiff states that he is disabled per se under Listing 1.04A. (Pl. Br. at 8.) Plaintiff bases his argument on his diagnosed degenerative disc disease and other medical evidence that he alleges satisfy the listing. (Pl. Br. 5–9.) However, the ALJ disagreed. The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. at 18.) Specifically, the ALJ found that "[n]o treating or examining physician has recorded findings satisfying the criteria of any medical listing, nor does the evidence show medical findings that are equivalent in severity to the criteria of a medical listing." (R. at 18.) The ALJ also found that "there lacks sufficient evidence to show compromise of claimant's nerve root or spinal cord with nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." (R. at 18.)

In order to be considered disabled per se under a listed impairment, a claimant must meet all the specified medical criteria in the listing. 20 C.F.R. § 404.1520(d); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). When making this determination, the "ALJ is responsible for . . . resolving ambiguities" in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Furthermore, an ALJ's determination is entitled to deference if it is supported by substantial evidence. *Moncada*, 60 F.3d at 523. Finally, the claimant bears the burden of proving that he is disabled per se. *Tackett*, 180 F.3d at 1098.

The relevant parts of Listing 1.04 provide:

1.04. Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral facture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.

With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A. Listing 1.04A has two requirements. First, a claimant must have a disorder of the spine resulting in compromise of a nerve root or the spinal cord. *Id*. Second, a claimant must present evidence of nerve root compression "characterized by" accompanying symptoms, such as motor loss. *Id*.

Substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet the criteria for Listing 1.04A. Although Plaintiff's impairments objectively satisfy some of the Listing 1.04A criteria, there is conflicting evidence as to whether his impairments satisfy all the criteria. Specifically, Plaintiff objectively has a disorder of the spine resulting in compromise of a nerve root—degenerative disc disease. However, there is ambiguity as to whether Plaintiff provided evidence of nerve root compression characterized by the accompanying symptoms required by Listing 1.04A. The ALJ's resolution of this ambiguity is supported by substantial evidence and is entitled to deference.

Plaintiff claims that "[e]vidence of nerve root compression alone is sufficient to satisfy" Listing 1.04A. (Pl. Br. at 7.) Plaintiff is incorrect. Listing 1.04A requires evidence of nerve root compression "characterized by" (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and if there is involvement of the lower back, (4) positive straight-leg raising test (sitting and supine). 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A. Contrary to Plaintiff's claim, any nerve root compression must be "characterized by" these additional findings to satisfy Listing 1.04A. (Pl. Br. at 7–8.) Proof of nerve root compression, without more, is insufficient.

Plaintiff also claims that his "compressed nerve root is objectively verified through a nerve conduction study." (Pl. Br. at 7.) However, there is also conflicting evidence on this issue. The March 2, 2016 nerve conduction study Plaintiff cites as objectively proving nerve root compression does not actually identify nerve root compression. (R. at 572.) Instead, Plaintiff relies on Dr. Greenwood's July 13, 2017 opinion that the March 2016 nerve conduction study "showed nerve compression." (R. at 696.) Dr. Greenwood's impression of the nerve conduction study, rather than the study itself, is Plaintiff's primary evidence of nerve compression.

Moreover, Plaintiff's MRI scans from June 2015 and July 2017 do not conclusively show nerve root compression. (R. at 459, 460, 689, 699, 749, 750.) A November 2015 treatment record noted that Plaintiff's June 2015 MRI showed that degeneration in Plaintiff's spine "is not compressing the exiting or traversing nerves." (R. at 689.) In August 2017, Dr. Greenwood noted that Plaintiff's July 2017 MRI was "[c]onsistent [with] findings of previous [June 2015] MRI," which did not show nerve root compression.[1] (R. at 699.)

Finally, there is conflicting evidence as to whether Plaintiff proved that his alleged nerve root compression was "characterized by" the other required symptoms. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A. For example, Plaintiff's medical records repeatedly note normal muscle strength, as opposed to the required muscle weakness or atrophy. (R. at 352, 367, 499, 696, 752.) Also, since Plaintiff alleges involvement of the lower back, he is also required to provide evidence of positive straight-leg tests (sitting and supine). 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A. It is unclear whether Plaintiff has done so. Plaintiff points to a single record from November 2015 that indicates a positive right straight-leg test. (R. at 683.) However, there is no indication whether the test was positive for both seated and supine positions as required. Furthermore, the record

---

[1] Plaintiff claims that the ALJ did not rely on this record and it is offered by Defendant as an impermissible post-hoc justification for the ALJ's opinion. (Reply at 3.) Plaintiff is incorrect because the ALJ repeatedly cited to this record throughout her opinion. (R. at 19–21.)

also contains evidence of repeated negative straight-leg tests. (R. at 367, 688, 696.)

Ultimately, substantial evidence supports the ALJ's determination that Plaintiff's impairments do not meet Listing 1.04A. Though there is conflicting evidence, it is the ALJ's duty to resolve the conflict, and the Court defers to the ALJ's judgment.

**B.  The ALJ had specific and legitimate reasons to reject Dr. Greenwood's opinion.**

Dr. Greenwood opined that Plaintiff has various functional limitations due to his medical impairments. He opined that Plaintiff can sit for only one hour at a time before needing to get up. (R. at 711.) He opined that Plaintiff can stand for only thirty minutes at a time before needing to sit or walk around. (R. at 712.) He opined that Plaintiff would need three to four unscheduled breaks per working day. (R. at 712.) He also opined that Plaintiff would miss more than four days of work per month. (R. at 715.)

The ALJ gave Dr. Greenwood's opinion no weight because it was inconsistent with the objective medical evidence and Plaintiff's conservative medical treatment. (R. at 21.) Specifically, the ALJ found that the significant limitations that Dr. Greenwood noted are "considerably incongruent" with Plaintiff's "generally normal physical functioning." (R. at 21.) Furthermore, the ALJ found that Plaintiff "has not taken pain medications for a long period, which indicates that [Plaintiff's] symptoms are not as limiting as reported." (R. at 21.) Instead, the ALJ gave some weight to the opinions of State agency medical consultants who found that Plaintiff would be limited to "light work." (R. at 21.)

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as 'it is well–supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the record].'"

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(d)(2)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If a treating physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion without "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The ALJ's two reasons for rejecting Dr. Greenwood's opinion are specific, legitimate, and supported by substantial evidence. The record generally supports the ALJ's finding that the objective medical evidence is inconsistent with Plaintiff's alleged limitations. Plaintiff's conservative use of medication also supports the ALJ's rejection of Dr. Greenwood's opinion.

Plaintiff argues that the ALJ's reliance on Plaintiff's normal physical findings is inappropriate because Dr. Greenwood also found that Plaintiff did not have abnormal gait or weakened strength and movement. (Pl. Br. at 11.) Relying on *Orn*, Plaintiff argues that the ALJ cannot reject a treating physician's opinion as inconsistent with the medical evidence by citing to an absence of medical impairments that are irrelevant to the impairments the treating physician found. (Pl. Br. at 10–11); *see Orn*, 495 F.3d at 635. In *Orn*, the ALJ erred by rejecting a physician's opinion regarding a claimant's asthma, because the ALJ improperly relied on an absence of range of motion limitations or neurological defects. *Id.* The ALJ in *Orn* erred because the claimant's normal range of motion and lack of neurological defects had nothing to do with the claimant's asthma. *Id.*

Here, the ALJ did not make the same type of error as in *Orn*. Dr. Greenwood opined that Plaintiff's limitations were, in part, related to his spinal and lower extremity impairments. (R. at 717–21.) Germane to Plaintiff's impairments and alleged limitations are his motor skills and musculature. For example, the Listings dealing with the musculoskeletal system consider a claimant's inability to ambulate effectively, *i.e.* their ability to walk, when evaluating functional loss. 20 C.F.R. Part 404, Subpart P, Appendix

1, Listing 1.00B2b(1). Therefore, the normal physical findings contained in the record are relevant to Plaintiff's physical limitations that Dr. Greenwood found, and it was not error for the ALJ to determine that those findings contradicted Dr. Greenwood's opinion.

Finally, Plaintiff claims that the ALJ improperly concluded that Plaintiff's "intermittent numbness and tingling" was inconsistent with Dr. Greenwood's opinion because a claimant need not be "'utterly incapacitated' in order to be disabled." (Pl. Br. at 10); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Ultimately Plaintiff takes issue with the ALJ's interpretation of the evidence and asserts that Plaintiff's interpretation of the evidence is superior. But "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The ALJ's interpretation of the evidence is rational. Consequently, the Court defers to the ALJ's decision.

**C.    The ALJ properly rejected Plaintiff's symptom testimony.**

At the hearing before the ALJ, Plaintiff testified to various functional limitations due to his physical impairments. (R. at 37–54.) The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 19.) Specifically, the ALJ rejected Plaintiff's symptom testimony because (1) his alleged limitations were disproportionate to the objective evidence, (2) there was a significant gap in treatment, (3) he was on a conservative medication regimen, and (4) his daily activities are unverifiable. (R. at 19–20.)

An ALJ performs a two-step analysis to evaluate the credibility of a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject

the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

"In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). But the ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony. *Id.* at 681. Additionally, if the ALJ rejects a Plaintiff's symptom testimony for a single permissible purpose, then the ALJ's errant rejection of the testimony for other additional reasons is harmless. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Three of the ALJ's four reasons for rejecting Plaintiff's testimony are sufficient. Each of the three reasons is specific, clear, convincing, and supported by substantial evidence. The ALJ's fourth reason—the unverifiability of Plaintiff's daily activities—is an insufficient reason, so the ALJ erred in that respect. However, that error is harmless.

The record supports the ALJ's finding that Plaintiff's alleged limitations are disproportionate to the objective medical evidence. The ALJ found that Dr. Greenwood noted Plaintiff's back impairment was only temporary, and the objective medical record was generally inconsistent with any severe limitations. (R. at 19–20.) Though this inconsistency cannot be the sole basis upon which the ALJ rejects a claimant's testimony, it is a permissible one. *Burch*, 400 F.3d at 681.

The ALJ also found that Plaintiff's testimony was inconsistent with his conservative medical treatment and medication use. The ALJ found that there was a significant gap in treatment before Plaintiff began seeing Dr. Greenwood in 2017. (R. at 20.) Plaintiff claims that there was not a gap in treatment since Plaintiff received epidural injections between 2014 and 2017. (Reply at 8.) Still, substantial evidence supports the ALJ's interpretation of the record and the Court defers to the ALJ's judgment. Plaintiff also claims the ALJ's

characterization of Plaintiff's Ibuprofen and Gabapentin as over-the-counter medications was error. The record indicates that the ALJ found Plaintiff's medication use contradicted his testimony because of its sparsity rather than its characterization as prescription versus over-the-counter. (R. at 39–40.) The ALJ's rejection of Plaintiff's testimony because of Plaintiff's conservative medication use is not error. Furthermore, any such error would be harmless because the ALJ offered other permissible purposes for rejecting Plaintiff's testimony. *See Carmickle*, 533 F.3d at 1162.

Finally, although the ALJ erred in rejecting Plaintiff's testimony because of the unverifiability of Plaintiff's daily activities, that error was harmless. An error is harmless when it does not affect the ultimate nondisability determination. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Specifically, an ALJ's error is harmless when the ALJ rejects a claimant's testimony for a permissible reason alongside an impermissible reason. *See Carmickle*, 533 F.3d at 1162. The ALJ cannot reject a claimant's testimony simply because his daily activities cannot be verified. *See* SSR 16-3p(2)(d). However, as discussed above, the ALJ also rejected Plaintiff's testimony for other permissible purposes. Consequently, the ALJ's error was harmless because substantial evidence supports the ultimate nondisability determination.

**IT IS THEREFORE ORDERED** affirming the January 24, 2018 decision of the Administrative Law Judge (R. at 12–28), as upheld by the Appeals Council on October 2, 2018 (R. at 1–6).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 21st day of November, 2019.

Michael T. Liburdi
United States District Judge